United States District Court
Southern District of Texas
**ENTERED**
April 01, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Robert Lynn Patterson, Sr., and | § | |
| Rosemary Patterson, | § | |
| *Plaintiffs,* | § | |
| | § | Civil Action H-25-5715 |
| v. | § | |
| | § | |
| Baker Hughes Oilfield | § | |
| Operations, Inc., et al., | § | |
| *Defendants.* | § | |

**MEMORANDUM AND RECOMMENDATION**

In this personal injury action, Plaintiffs assert claims arising from Robert Lynn Patterson, Sr.'s (Patterson) exposure to asbestos on the outer continental shelf during the 1960s and 1970s. This case has been referred to the undersigned magistrate judge for full pretrial case management. ECF No. 22. Pending before the court is Plaintiffs' Motion to Sever and Remand. ECF No. 16. The court recommends that the motion be **GRANTED**, and that the Jones Act claims be **SEVERED** and **REMANDED** to state court.

### 1. Background and Procedural Posture

Plaintiffs filed suit in the 234th District Court of Harris County, Texas on November 6, 2025. ECF No. 1-4. The lawsuit centers around Patterson's exposure to asbestos-containing drilling mud, which he alleges caused him to develop mesothelioma. *Id.* at 17. Patterson sues Baker Hughes Oilfield Operations, Inc. (Baker Hughes) individually and as the successor-in-interest to Milchem Incorporated in its capacity as a "manufacturer, contractor, and/or supplier of asbestos-containing drilling muds, including but not limited to Milchem Drilling mud and/or Flosal Drilling Mud." *Id.* Patterson sued Chevron Phillips

Chemical Company LP (CPChem) in its capacity as a "manufacturer of asbestos-containing Flosal Drilling Mud." *Id.* Against those two entities, Patterson alleges various claims including for failure to warn him of the dangers of the drilling mud, and failing to properly design, manufacture, and test the drilling mud. *Id.* at 22–23, 32–33.

Patterson sues Union Oil Company of California (UNOCAL) in its capacity as his former employer under the Jones Act. ECF No. 1-4 at 17–18. During his time working for Union Oil from approximately 1961–1975, Patterson held various positions including roustabout, trainee, and engineer on jack-up rigs. *Id.* at 18. He also held various jobs on land. *Id.* When on offshore jobsites, Patterson's duties required him to personally handle, cut, and install asbestos-containing parts, and to work in close proximity to others performing similar duties, including to open, dump, and mix asbestos-containing drilling mud. *Id.* at 18–19. While with UNOCAL, Patterson's work locations included Vermillion Block 14 in Louisiana. *Id.* at 18.

In a pre-suit deposition, Patterson testified about the nature and location of his work for Union Oil. Patterson stated that the wells he worked on "were listed as an Outer Continental Shelf number, so they would have been on the Outer Continental Shelf." ECF No. 1-1 at 4. He also confirmed that "the permits that were issued were issued by the Department of the Interior for drilling on the Outer Continental Shelf." *Id.* Patterson testified that he worked on Vermillion Block 14 and South Marsh Field Block 49. *Id.* at 5–6. Those two fields were marked on Exhibit 6 to the deposition, which shows them to be on the Outer Continental Shelf. *Id.*; ECF No. 1-2. While working in those areas, Patterson confirmed that he was working on a jack-up barge. *Id.* at 7. He also confirmed that UNOCAL was engaged in oil field exploration and production on the Outer Continental Shelf while he was employed

there. *Id.* at 8. Patterson also confirmed that his exposure to asbestos was "from the work [he] performed on [his] employer's behalf on the Outer Continental Shelf." *Id.* Specifically, Patterson claims that he was "exposed to asbestos while working on the Diamond M jack-up rig on behalf of Union Oil Company . . . on the Vermillion Field . . . during August '64 through May '65." *Id.* at 9.

On November 26, 2025, CPChem removed this case to federal court. ECF No. 1. Removal jurisdiction is predicated upon the existence of a federal question under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331, *et seq.* ECF No. 1 at 1–2. CPChem obtained Baker Hughes's consent to removal, but did not obtain UNOCAL's consent, because doing so CPChem states was unnecessary. *Id.* at 6.

Plaintiffs have filed a Motion to Sever and Remand. ECF No. 16. Plaintiffs seek to have the court sever the Jones Act claims against UNOCAL from the claims against the other two Defendants and to remand the Jones Act claims to state court. *Id.* at 16. In its response, UNOCAL argues that Plaintiffs' Jones Act claims are fraudulently pleaded and that the court should thus pierce the pleadings, retain jurisdiction over the Jones Act claims, and dismiss those claims against UNOCAL. ECF No. 19.

### 2. *Removal Jurisdiction*

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). Removal can be based on diversity jurisdiction if the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. *See* 28 U.S.C. §§ 1332, 1441; *Priester v. Deutsche Bank Nat'l Tr. Co.*, 832 F. App'x 240, 244 (5th Cir. 2020). A case may also be removed if the case is one that "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441. The

3

defendant "has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). "[O]perative facts and pleadings are evaluated at the time of removal." *In re Deepwater Horizon,* 745 F.3d 157, 162–63 (5th Cir. 2014). Here, the case was removed based on a federal question. Defendants CPChem and Baker Hughes argue that the claims against them arise under OCSLA. The issue is that the claims against UNOCAL are under the Jones Act, and such claims are expressly not removable. *McDonald v. Enermech Mech. Servs., Inc.,* No. 23-CV-0126, 2023 WL 4109786, at *2 (S.D. Tex. May 30, 2023).

Section 1441(c) sets forth the procedure to follow when a civil action contains both claims that arise under federal law, as well as those that are not removable:

(1) If a civil action includes—

(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

(B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

(2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

28 U.S.C. § 1441(c).

### 3. Analysis

The court turns first to whether Plaintiffs' claims against CPChem and Baker Hughes arise under OCSLA. Under 43 U.S.C. § 1349(b)(1)(A), the district courts of the United States have exclusive jurisdiction over cases and controversies arising out of, or in connection with "any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . ." Because a plaintiff need not expressly invoke OCSLA in order for it to apply, courts employ a "but-for" test to determine whether a cause of action arises under OCSLA. *In re Deepwater Horizon,* 745 F.3d at 163. A claim arises under OCSLA if (1) the activity that caused the injury constituted an "operation conducted on the Outer Continental Shelf" that involved exploration or production of minerals, and (2) the case arises out of or in connection with the operation. *Id.*

Here, the but-for test is easily met. Not only do Plaintiffs concede that the claims against CPChem and Baker Hughes arise under OCSLA, ECF No. 16 at 4, but Patterson's deposition testimony confirms that OCSLA applies. Patterson confirmed that he was working on the Outer Continental Shelf when he was exposed to asbestos, that the work he was performing was in furtherance of exploration for minerals, and that the asbestos exposure was in connection with that work. This is sufficient to demonstrate that Plaintiffs' claims against CPChem and Baker Hughes arise under OCSLA.

Plaintiffs' claims against UNOCAL are under the Jones Act and thus do not "arise under" federal law for purposes of federal question jurisdiction under 28 U.S.C. § 1331. *Box v. Eco Servs. Ops. Corp.*, 802 F. Supp. 3d 986, 988 (S.D. Tex. 2025). And, again, Jones Act claims are expressly not removable. *Id.* at 989. Thus, for

purposes of 28 U.S.C. § 1441(c), this case includes both claims that arise under federal law—OCSLA—and claims that are "made nonremovable by statute"—Jones Act. The statute expressly requires that the Jones Act claims be severed and remanded to state court.

UNOCAL argues that the court should not follow the statute but should instead retain jurisdiction over the Jones Act claims, pierce the pleadings, determine whether the Jones Act claims are fraudulently pleaded, and, if so, dismiss them. The court disagrees. Such a procedure is necessary only when a fraudulently pleaded claim would frustrate federal jurisdiction. *McDonald*, 2023 WL 4109786 at \*4. Because the statute allows for the court to retain jurisdiction over the OCSLA claims while returning the Jones Act claims to state court, even if the latter claims are fraudulently pleaded, federal jurisdiction is not frustrated. *Id.*; *see also Tauriac v. Staffing the Universe, LLC,* No. 4:24-CV-04290, 2025 WL 1886775, at \*6 (S.D. Tex. June 18, 2025) (noting a line of authority addressing "hybrid" OCSLA and Jones Act cases where courts have opted to sever and remand the Jones Act claims, rather than pierce the pleadings, because the existence of the Jones Act claim does not frustrate federal jurisdiction), *R. & R. adopted*, 2025 WL 1886005 (S.D. Tex. July 8, 2025). The court will not pierce the pleadings and will not retain jurisdiction of the Jones Act claims.

Plaintiffs argue in the alternative that the court should remand the entire case because UNOCAL's consent to removal was not obtained. Again, the statute explicitly addresses this issue. Under 28 U.S.C. § 1441(c), Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1). Paragraph (1)(A) addresses claims arising under federal law within the meaning of 28 U.S.C. § 1331. That would include OCSLA claims,

6

not Jones Act claims. So only Baker Hughes's consent was required.

### *4. Conclusion*

The court recommends that Plaintiff's Motion to Sever and Remand, ECF No. 16, be **GRANTED** in part. The court recommends that the Jones Act claims be severed and remanded to state court.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on April 1, 2026.

_____
Peter Bray
United States Magistrate Judge